AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of New York

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>SINCERE COX,<br><br>Defendant | )<br>)<br>)  Case No.  1:25-MJ-258(PJE)<br>)<br>)<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of August 19, 2025 in the county of Albany in the Northern District of New York the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1512(c)(1) | Corruptly concealing evidence |

This criminal complaint is based on these facts:
See attached affidavit

☒   Continued on the attached sheet.

_____
Complainant's signature
FBI Special Agent Danielle Ellis
Printed name and title

Attested to by the affiant in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

Date:   August 29, 2025

_____
Judge's signature
Hon. Daniel J. Stewart, U.S. Magistrate Judge
Printed name and title

City and State:   Albany, NY

## AFFIDAVIT IN SUPPORT OF
## A CRIMINAL COMPLAINT

I, Danielle Ellis being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of a criminal complaint charging SINCERE COX ("SINCERE") with violating 18 U.S.C. § 1512(c)(1) (corruptly concealing evidence from an official proceeding).

2. I am a Special Agent with the Federal Bureau of Investigation (FBI). I am empowered to investigate and make arrests for the offenses set forth in 18 U.S.C. § 2516. As such, I am an "investigative or law enforcement officer" within the meaning of 18 U.S.C. § 2510(7).

3. I have been employed as a Special Agent of the FBI since August 2023. I am currently assigned to the Albany Field Office, investigating white collar violations, including complex financial crime. Prior to becoming an FBI Special Agent, I was employed by the Enfield Police Department in Connecticut and assigned to the patrol division, where I conducted investigations of internet crimes and financial fraud. Since joining the FBI, I have received training on the proper techniques for investigating financial crimes, including the use of surveillance, financial analysis, and the application for and execution of search and arrest warrants.

4. As the case agent, I am familiar with the facts of this case. The facts in this affidavit come from my personal observations, interviews of witnesses, my training and experience, and my and others' analysis of various records and information. The information contained in this affidavit is not an exhaustive account of everything I know about this investigation. Rather, it contains only the facts that I believe are necessary to establish probable

1

cause in support of a criminal complaint. Where statements of others are related in this affidavit, they are related in substance and in part.

## PROBABLE CAUSE

5.  As set forth below, there is probable cause to believe that on August 19, 2025, SINCERE corruptly altered, destroyed, mutilated, or concealed a record, document, or other object, and attempted to do so, with the intent to impair the object's integrity or availability for use in an official proceeding.

6.  SINCERE is the nephew of Iziah Cox ("IZIAH") and Kaya Cox ("KAYA"), who were charged by sealed criminal complaint on August 18, 2025 with conspiring to make false statements to numerous banks in the Capital Region and elsewhere by operating an elaborate network of dozens of New York State business entities and Albany County "Doing Business As" ("DBA") business entities. *See* 1:25-MJ-237 (PJE), ECF #1. These trade names were used to open numerous bank accounts in the Capital Region of New York and elsewhere that served to collect incoming wire transfers and checks resulting from various domestic and international fraud scams, many of which were Business Email Compromise ("BEC") frauds (the "DBA fraud conspiracy").

7.  As part of the DBA fraud conspiracy, the conspirators registered DBAs in Albany County that utilize the names of real companies, most of which are international. These DBAs are then utilized by members of the conspiracy, including KAYA, SINCERE, and Co-Conspirator 1, to open shell company deposit accounts at banks and credit unions in the names of these companies, which then receive wires intended for the real companies that have been initiated through BECs or other fraudulent means. The conspirators then rapidly deplete the funds through large cash withdrawals, point-of-sale debits, peer-to-peer transfers, cashier's check

withdrawals, ACH transfers, and wire transfers, some of which have been traced by the FBI to other criminal networks located elsewhere in the United States.

8. It appears that IZIAH secretly controlled many of the shell company deposit accounts his coconspirators opened, concealing his name from the financial institutions. Many of them were linked to his Cash App, thereby giving him access to the funds, and he instructed his coconspirators what names to use, how to open the accounts, and gave his coconspirators guidance on how to respond when a financial institution questions the use and purpose of the accounts.

9. Since June 2023, SINCERE has registered at least five DBAs in Albany County under names of real companies, consistent with being a member of the DBA fraud conspiracy. For example, Entity 1 is a real company based in Texas. On January 14, 2025, SINCERE filed a DBA form in Albany County registering himself as doing business as Entity 1. On April 15, 2025, an entity based in Yemen ("Victim 1") doing business with Entity 1 reported to the FBI that it had been directed through spoof emails to wire a total of $337,922 on January 20, 2025 and March 18, 2025 for two invoices from Entity 1 to a fraudulent Bank of America account in the name of Entity 1.

### August 19, 2025 Search Warrants

10. At approximately 6:00 a.m. on August 19, 2025, the FBI, together with numerous agencies, executed five residential federal search warrants at various locations in the Capital Region, including the residences of IZIAH, KAYA, and Coconspirator 1, as well as searches of six persons and their vehicles, including those of IZIAH, KAYA, and Coconspirator 1. The warrants authorized the seizure of, among other things, records related to the DBA fraud and electronic devices. Contemporaneous with the execution of the warrants related to IZIAH

and KAYA, the FBI also arrested IZIAH and KAYA on warrants issued in connection with the August 18 criminal complaint described above.

11. When federal agents executed the search warrant on KAYA's residence, they announced their authority as federal officers and provided a copy of the search warrant to Coconspirator 2 after placing KAYA under arrest. Coconspirator 2, who is a relative of SINCERE, IZIAH, and KAYA, was present throughout the execution of the federal search warrant at KAYA's residence.

12. During the search of Coconspirator 1's residence, at approximately 7:01 AM, federal authorities seized multiple firearms in a backpack. At approximately 12:40 PM, law enforcement uncovered numerous additional firearms concealed in stereo speakers. In totally, law enforcement recovered 68 firearms, 63 of which were concealed inside of stereo speakers, from Coconspirator 1's residence. During the search of IZIAH's residence, investigators recovered one firearm in plain view at approximately 10:13 AM. Later that day, at approximately 3:39 PM, investigators recovered 24 additional firearms concealed inside of stereo speakers similar to those at Coconspirator 1's residence.

13. After the initial firearms were recovered from Coconspirator 1's residence on August 19, 2025, at approximately 10:00 AM the FBI commenced surveillance of a storage facility in Menands, New York which it had learned through its investigation had a unit registered to Coconspirator 1 that was paid for by members of the DBA fraud conspiracy, including SINCERE. The FBI obtained and executed a federal warrant to search that unit later in the day on August 19, 2025. That search resulted in the seizure of an additional 40 firearms, some of which were also concealed in stereo equipment. Also seized were several electronics devices, including cellular phones.

14.     The firearms seized by law enforcement on August 19, 2025 include machineguns, firearms with obliterated serial numbers, and numerous firearms with high-capacity magazines. Many of them were loaded. Agents also recovered numerous rounds of loose ammunition.

15.     Also on August 19, 2025, FBI obtained records from U-Haul Moving & Storage in Albany-Menands ("U-Haul Albany") which indicated that Unit 1412 was rented to SINCERE starting on July 24, 2025. On August 21, 2025, the FBI obtained and executed a federal warrant to search Unit 1412 for evidence, instrumentalities, fruits, and contraband, including firearms, of numerous offenses. In executing the search warrant, the FBI recovered one firearm, loose ammunition, and electronics devices. Below are two photographs of the firearm: one as it appeared when law enforcement located it buried in clothes inside a cardboard box and the other, which captures the dissembled pieces of the firearm found inside the box.





The FBI did not locate any stereo equipment in the search of Unit 1412.

### SINCERE's Secretion of Evidence on August 19, 2025

16. I have reviewed registration and access records to Unit 1412. It was rented by SINCERE on July 24, 2025 but was not accessed until the evening of July 25, 2025. On July 22, 2025, SINCERE texted with KAYA about having to move his belongings into storage. Then, in the afternoon of July 25, 2025, SINCERE and KAYA texted each other in a conversation consistent with SINCERE picking something up from KAYA to bring to the storage facility. For example, SINCERE stated, "I'm still here getting it together . . . packed the truck." KAYA wrote, "Way . . . we cool boy at my crib." SINCERE responded, "I'm bout to drop someone off real quick . . . I can push up after give me a second." This message was sent at approximately 3:05 pm, and the storage facility records show that SINCERE's unit was first accessed at 6:21 pm on July 25, 2025, when his door was opened, and the door was then locked at 7:03 pm. Records show the unit was then accessed several times between July 28, 2025 and August 17, 2025 for relatively short periods of time between the unlocking and locking of the door.

17. I have also reviewed surveillance video from U-Haul Albany dated August 19, 2025—the same day the FBI executed the residential search warrants and KAYA and IZIAH made their initial appearances on the federal DBA fraud complaint. At approximately 1:23 PM,

6

SINCERE arrived to the facility in his black Honda Accord. He swiped his badge to gain access to the storage unit area of the facility, and his unit was accessed from 1:23 PM to 1:36 PM. After SINCERE left the vehicle, a person inside the vehicle can be observed moving from the passenger seat to the driver's seat and briefly operating the vehicle. SINCERE can be observed thereafter leaving the facility and does not appear to be carrying anything. At approximately 4:26 PM, SINCERE again drove his 2018 Accord to the facility and swiped his badge to gain access to the storage unit area of the facility. His unit was accessed from 4:29 PM to 4:34 PM. SINCERE can be observed thereafter leaving the facility and does not appear to be carrying anything. At approximately 8:55 PM, SINCERE drove to the facility again in his 2018 Accord and he and Coconspirator 2 entered the storage unit area of the facility after SINCERE swiped his access badge to gain access. A photograph depicting SINCERE swiping his access badge is depicted in the photograph below:



18.     SINCERE's unit was then accessed from 8:57 PM to 9:12 PM. During this time, SINCERE can be observed leaving the facility carrying a heavy blue bag that is consistent with containing stereo equipment, electronics devices, paperwork, or firearms and ammunition, as seen in the photograph below:



19.     SINCERE can then be observed placing the bag into his vehicle and returning to the storage area of the facility. After his unit was locked, SINCERE and Coconspirator 2 can be observed leaving the facility, and driving off in his vehicle.

20.     In my training and experience, this activity is consistent with an effort to remove and secrete evidence. SINCERE's entry to the facility and access to the unit earlier in the day is consistent with casing the location and ensuring that it had not been searched. His removal of property from the location several hours after twice casing it is consistent with the removal of evidence he knew was subject to an official proceeding. It is common during and in the aftermath of the execution of search warrants for those engaged in the criminal activity to attempt to secrete and conceal evidence that has not yet been subjected to search. Frequently those involved in such activity rely on associates and family members who can be trusted to engage in such concealment.

21. The FBI's identification of only a single disassembled firearm buried in a box of clothing inside U-Haul Unit 1412 is also consistent with the removal of firearms from the storage unit by SINCERE. As set forth above, in other locations where members of the DBA fraud conspiracy stored firearms, they stored substantial numbers of firearms, including in stereo equipment (and no stereo equipment was found in Unit 1412).

22. On August 28, 2025, the FBI executed a federal search warrant authorizing the search of SINCERE's person and vehicle. Inside the vehicle, the FBI recovered a copy of the front page of the search warrant for IZIAH's residence, as well as a bank statement for a DBA entity that SINCERE had registered in Albany County. The FBI did not locate the blue bag depicted above, or any firearms. The FBI seized two cellular phones from inside the vehicle.

## CONCLUSION

23. Based on the foregoing, there is probable cause to conclude that on August 19, 2025 SINCERE Cox corruptly altered, destroyed, mutilated, or concealed a record, document, or other object, and attempted to do so, with the intent to impair the object's integrity or availability for use in an official proceeding.

Attested to be the affiant:

Danielle Ellis
Special Agent
Federal Bureau of Investigation

I, the Honorable Daniel J. Stewart, United States Magistrate Judge, hereby acknowledge that this affidavit was attested by the affiant by Teams on August 29, 2025, in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

Hon. Daniel J. Stewart
United States Magistrate Judge